**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DJENE TRAORE,
*Plaintiff*,
v.
MAYOR AND CITY COUNCIL OF BALTIMORE,
*Defendant*

Case No. 1:25-cv-00887-ABA

**MEMORANDUM OPINION**

Plaintiff Djene Traore ("Plaintiff" or "Ms. Traore") has sued the Mayor and City Council of Baltimore ("Defendant" or "the City") for alleged unlawful discrimination and retaliation in relation to the Mayor's Office of Neighborhood Safety and Engagement's ("MONSE") withdrawal of an offer of employment that it had extended to Ms. Traore. The City has filed a motion to dismiss, or in the alternative, for summary judgment. For the reasons outlined below, the Court will dismiss all of Plaintiff's claims except her claim for retaliation brought under Title VII of the Civil Rights Act of 1964 ("Title VII").

## I. BACKGROUND

### A. Facts[1]

Ms. Traore was employed by the Baltimore Police Department ("BPD") from August 2017 until she was terminated on April 3, 2019. ECF No. 9 ¶ 8. Ms. Traore sued BPD on April 2, 2022, alleging racial discrimination in her firing; that case remains pending. *Id.* ¶ 9; *see Traore v. Baltimore Police Dep't,* Case No. 22-cv-793-MJM, 2024 WL 4361860 (D. Md. Sept. 30, 2024). In the fall of the same year she was terminated

[1] In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all of the factual allegations contained in the complaint[.]" *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

from BPD, Ms. Traore applied for a position with the City of Baltimore Mayor's Office of Neighborhood Safety and Engagement ("MONSE"), which she alleges she was offered in October 2022. *Id.* ¶¶ 11–12.

Ms. Traore alleges that MONSE Director Shantay Jackson later rescinded that offer in retaliation for Ms. Traore's lawsuit against BPD. *See id.* ¶¶ 36–37, 43–45. Plaintiff alleges that Ms. Jackson knew, prior to extending the offer, that BPD had terminated Ms. Traore's employment. *Id.* ¶¶ 23–24. Plaintiff contends that she first informed Ms. Jackson of the lawsuit in a conversation that occurred sometime between when the employment offer was extended in October 2022 and Plaintiff's planned start date of November 28, 2022. *Id.* ¶¶ 16, 29. Plaintiff alleges that, upon learning of the lawsuit, Ms. Jackson's "tone changed," and she told Plaintiff to "hold off" on signing the employment letter, stated that the lawsuit "could pose an 'issue,'" and "indicated that she [would] need to check with some people." *Id.* ¶¶ 30–31. Plaintiff alleges that, in that same conversation, Ms. Jackson stated she "did not care" and "already knew" about Plaintiff's prior termination by BPD. *Id.* ¶ 23. Eight days after that conversation, Ms. Jackson informed Plaintiff that the offer of employment had been rescinded, citing the termination by BPD as the reason. *Id.* ¶¶ 32–33.

**B. Procedural History**

After exhausting administrative procedures, Plaintiff filed this complaint. ECF No. 1. She asserted a claim of "discrimination and retaliation" under Title VII against the City and BPD. *Id.* ¶¶ 10–41. Defendant filed a motion to dismiss on August 26, 2025, arguing that Plaintiff had failed to state a claim upon which relief can be granted and that BPD was not a proper defendant. ECF No. 8. On September 25, 2025, Plaintiff filed an amended complaint naming only the Mayor and City Counsel as defendants, ECF No.

9, and adding a new count for "race-based retaliation" under 42 U.S.C. § 1981 brought under 42 U.S.C. § 1983.[2] *Id.* ¶¶ 38–51. Defendant then filed a motion to dismiss the amended complaint, or in the alternative, for summary judgment. ECF No. 13. Plaintiff filed an opposition brief, ECF No. 16, and Defendant filed a reply brief, ECF No. 19.

## II. DISCUSSION

### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Mere "labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement" are insufficient to meet the Rule 8 pleading standard. *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6).

The Court "may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023). Here, both parties refer to materials beyond the pleadings to their briefs: The City attached to its motion to dismiss a copy of Baltimore City's Administrative Manual, ECF No. 13-4; Ms. Traore's opposition refers to the Baltimore City Charter. Both documents are government records that are readily available to the public, and neither party challenges their authenticity or otherwise raises any objections to their use. Accordingly, the Court may consider, and does

---

[2] "[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). Therefore, for avoidance of confusion, the Court will refer to Count II as a § 1983 claim in this opinion.

consider, these documents without converting the motion to one for summary judgment.

**B. Section 1983 Claims**

Plaintiff has not alleged sufficient facts to establish that she may bring her discrimination and retaliation claims against the City pursuant to § 1983.

In *Monell v. Department of Social Services of City of New York*, the U.S. Supreme Court held that municipal governments may be liable under § 1983 for deprivations of federal rights only when an allegedly illicit action was taken pursuant to "official policy" or "custom." 436 U.S. 658, 690–91 (1978); *see also Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) (a plaintiff must prove "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights"). Plaintiff can establish that policy or custom in one of four ways:

> (1) [T]hrough an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 533 (4th Cir. 2022) (quoting *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)).

Ms. Traore focuses on the second method, arguing that Ms. Jackson, the MONSE Director, "possessed final policymaking authority regarding the rescission of the employment offer." ECF No. 16 at 7, *see also* ECF No. 9 ¶¶ 40–42 (alleging that Ms. Jackson "had final policymaking authority delegated to her by [the City]," and "acted as

the policymaker for MONSE when she rescinded Plaintiff's employment offer"). However, "merely stating the legal conclusion that [an individual] had final policymaking authority" is not sufficient at the motion to dismiss stage. *Misjuns v. City of Lynchburg*, 139 F.4th 378, 385 (4th Cir. 2025).

"[W]hether a particular official has final policymaking authority is a question of state law." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Both parties refer to local policies and ordinances in support of their arguments. Ms. Traore cites Article IV § 7 of the Baltimore City Charter, which states in relevant part that "municipal officers . . . shall have the sole power of appointment and removal of all . . . subordinate employees employed by them." The City, for its part, argues that it "does not grant final policy making authority to any employee tasked with hiring" but rather "vests authority on hiring practices in the Department of Human Resources ('DHR')." ECF No. 13-1 at 6. It cites to a manual published by DHR on hiring practices that "strictly prohibits retaliation against any individual for having: 1) made a complaint of discrimination or harassment; 2) opposed discrimination or harassment at work; or 3) participated in a complaint investigation." ECF 13-4 at 3.

Ms. Traore has not alleged sufficient facts to establish that Ms. Jackson had final policymaking authority within the meaning of *Monell* and its progeny, as Ms. Traore's allegations, even accepted as true (and with all reasonable inference drawn in her favor), do not establish that any action attributable to the City itself was the "moving force" behind the alleged violation. *See Starbuck*, 28 F.4th at 535. In her amended complaint, Plaintiff alleges that Ms. Jackson withdrew the offer of employment in retaliation for Ms. Traore's lawsuit against BPD. *See* ECF No. 9 ¶¶ 36–37, 43–45. Ms. Traore therefore must allege sufficient facts to establish that Ms. Jackson had authority to set the City's

policies regarding retaliation in hiring decisions. In *Davison v. Randall*, the Fourth Circuit held that a county official who banned an individual from a social media page she administered was not acting with final policymaking authority when the county board retained the authority to set the social media policy. 912 F.3d 666, 689 (4th Cir. 2019). The same analysis applies here. Plaintiff has not alleged any such facts.

To the contrary, DHR set a policy that strictly prohibited Ms. Jackson from retaliating against Ms. Traore for filing her lawsuit against BPD. ECF No. 13-1 at 6. There is a distinction between "the authority to make final *policy*" and "the authority to make final implementing *decisions*." *Greensboro Pro. Fire Fighters Ass'n, Loc. 3157 v. City of Greensboro*, 64 F.3d 962, 966 (4th Cir. 1995). The allegation that Ms. Jackson violated the policy does not establish that she had policymaking authority. *See also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality.").

Plaintiff alternatively argues that the City demonstrated "both implicit authority and municipal acquiescence" to Ms. Jackson's "exercise of final policymaking authority." ECF No. 16 at 9. Specifically, Plaintiff has pled that, upon learning of Plaintiff's lawsuit against BPD, Ms. Jackson "indicated that she [would] need to check with some people" before getting back to Plaintiff about her employment offer. ECF No. 9 at 5 ¶ 31. From these facts, Plaintiff asks the Court to infer that "Director Jackson sought advice and guidance from others within the municipality and, after doing so, decided not to move forward with hiring Plaintiff." ECF No. 16 at 9.

Policymaking authority can be delegated or "implied from a continued course of knowing acquiescence by the governing body in the exercise of policymaking authority

by an agency or official." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). However, the Court need not decide at this stage whether Ms. Jackson's consultation with other city officials would constitute a "continued course of knowing acquiescence," *id.*, as Plaintiff has not alleged sufficient facts to establish that any city officials acquiesced to Ms. Jackson's decision to rescind Plaintiff's offer. Plaintiff has not alleged that, if Ms. Jackson consulted with any individual with policymaking authority, any such individual implicitly or explicitly approved rescinding Plaintiff's offer of employment on retaliatory grounds. Therefore, the City's motion to dismiss will be granted as to Count II.

### C. Title VII Claims

In contrast, Plaintiff has stated a claim for retaliation under Title VII (Count I).[3]

To state a claim for retaliation under Title VII, Ms. Traore must allege facts sufficient to establish "(i) that she engaged in protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Noonan v. Consol. Shoe Co., Inc.*, 84 F. 4th 566, 574 (4th Cir. 2023) (quoting *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 653 (4th Cir. 2021)). Defendant argues that Plaintiff has not pled sufficient facts to establish that Ms. Jackson knew that Plaintiff's lawsuit alleged race-based

[3] In the heading for Count I, Plaintiff states her claims are for "discrimination and retaliation" under Title VII. ECF No. 9 at 2. But she does not plead any facts alleging *discrimination* "because of" her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Accordingly, to the extent Plaintiff alleges a Title VII claim for discrimination, that claim is dismissed. *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (no Title VII discrimination claim when plaintiff "did not allege facts sufficient to claim that the reason it failed to hire her was because of her race or sex").

discrimination. ECF No. 13 at 9; ECF No. 19 at 5–6. Specifically, the City argues that the complaint "merely" alleges that Plaintiff "told Director Jackson that she had a pending 'EEO' lawsuit against BPD." ECF No. 13-1 at 9.

But in Paragraph 43 of the Amended Complaint Plaintiff alleges that "[b]y using her final policymaking authority to rescind Plaintiff's offer after learning that Plaintiff had engaged in protected activity (filing an EEOC charge and lawsuit *alleging race-based discrimination*), Director Jackson adopted and implemented an official policy of retaliating against Plaintiff for the exercise of her federal rights." ECF No. 9, at 6 ¶ 43 (emphasis added). In its reply, the City dismisses this paragraph as "consist[ing] of a legal conclusion." ECF No. 19 at 5–6.

That paragraph is largely conclusory, but a complaint may contain a mix of factual allegations and legal conclusions, and the Court is obligated to treat those factual allegations as true at this stage. *See Burnette v. Fahey*, 687 F.3d 171, 181 (4th Cir. 2012). Here, Plaintiff has alleged that Ms. Jackson revoked the employment offer because Plaintiff had filed a lawsuit "alleging race-based discrimination." ECF No. 9, at 6 ¶ 43. Plaintiff has sufficiently alleged that Ms. Jackson was aware that the lawsuit alleged race-based discrimination.

The City also argues that Plaintiff has not pled sufficient facts to establish that there was a causal relationship between Plaintiff's lawsuit and Ms. Jackson's decision to rescind the offer. ECF No. 13 at 10–12; ECF No. 19 at 4–5. At the motion to dismiss stage, causation may be established "by 'show[ing] that the adverse act bears sufficient temporal proximity to the protected activity,' or by showing 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or a combination of the two." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218–219 (4th

Cir. 2022) (quoting *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)). The City argues that "if MONSE had two reasons for rescinding the offer letter and chose a nondiscriminatory reason for doing so, the existence of an alternative yet discriminatory reason does not shield Plaintiff from the adverse employment action." *Id.* at 10. It also argues that Plaintiff's causation argument is "implausible" because "MONSE has a duty to hire employees who will not compromise the agency's public safety missions and initiatives, which are administered in close partnership with BPD." *Id.* at 11. The City argues that "once [Ms. Jackson] became aware of the facts and circumstances surrounding Plaintiff's termination [from BPD], she would most likely have concluded that she could come to only one decision, which was to rescind the employment offer." ECF No. 19 at 5. But that argument requires the Court to assume that Ms. Jackson was not aware of the underlying facts surrounding Ms. Traore's termination from BPD, that Ms. Jackson researched the lawsuit at some point before rescinding Ms. Traore's offer and became aware of those facts, and that Ms. Jackson then based her decision to rescind Plaintiff's offer solely on that basis.[4] Ms. Traore did not plead those facts, but instead pled that the fact that she had sued BPD was a but-for cause of MONSE's decision to rescind her offer. *See Megaro*, 66 F.4th at 157 ("Courts are limited to considering the sufficiency of the allegations set forth in the complaint.").

[4] Despite the City's request, ECF No. 19 at 5 n.3, the Court need not take judicial notice of Plaintiff's EEO lawsuit. Plaintiff has not plead that Ms. Jackson reviewed any of the underlying facts and circumstances from that docket, and therefore it is not relevant at this stage to the question of whether Plaintiff has plead sufficient facts to establish a claim for retaliation. For similar reasons, the Court will not take judicial notice of several public websites linked in the City's opening brief regarding the relationship between MONSE and BPD. ECF No. 13 at 11.

Plaintiff need not, at this stage, prove that the City's stated reason for her firing was a pretext. *See Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024). Instead, she may "demonstrate causation by temporal proximity, or by 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or by a combination of the two." *Id.* at 593 (quoting *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021); *see also id.* at 599 ("[I]t is possible for a Title VII plaintiff to plead herself out of court by identifying a . . . nondiscriminatory reason for the [ ] adverse action . . . however, [ ] such doomed pleading will happen only if the complaint fails to allege *any other facts* that support a plausible inference of causation.") (emphasis added). Plaintiff has pled both. She has alleged that her offer was rescinded eight days after her conversation with Ms. Jackson. ECF No. 9 ¶¶ 32–33. She has also pled that Ms. Jackson was previously aware that Plaintiff had been fired by the BPD and "stated that she did not care," ECF No. 9 at 4 ¶¶ 23–24, that Ms. Jackson told Plaintiff to "hold off" on signing the employment letter after learning of Plaintiff's lawsuit, that Ms. Jackson stated that the lawsuit "could pose an 'issue,'" and that Ms. Jackson "indicated that she will need to check with some people." *Id.* at 5 ¶¶ 30–31. These facts, viewed together, support a plausible inference that Ms. Jackson's stated reasoning for rescinding Plaintiff's offer was pretextual.

For these reasons, Plaintiff has adequately stated a claim for retaliation. Of course, this decision is based on Plaintiff's allegations, which the Court accepts as true; in denying the motion to dismiss the Court does not decide one way or the other whether Plaintiff will be able to prevail on her claim. But the allegations, accepted as true, are sufficient for Count I to proceed to discovery.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss as to Count II, and deny the motion as to the retaliation claim in Count I. A separate order follows.

Dated: September 11, 2026

*/s/*
Adam B. Abelson
United States District Judge